# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ROY JONES (#358063)**                                          **CIVIL ACTION**

**VERSUS**

**DR. JASON COLLINS, ET AL.**                              **NO. 13-0392-SDD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on June 20, 2014.

_____
      **RICHARD L. BOURGEOIS, JR.**
      **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ROY JONES (#358063)**                                    **CIVIL ACTION**

**VERSUS**

**DR. JASON COLLINS, ET AL.**                         **NO. 13-0392-SDD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion for Partial Summary Judgment (Rec. Doc. 14). This Motion is not opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dr. Jason Collins, Nurse Practitioner Karla Bringedahl, Medical Technician White (also identified as "EMT # 535"), Medical Technician Diaz (also identified as "EMT # 544"), Ass't Warden Stephanie Lamartiniere, Lt. Mark Allen, an unidentified "Jane Doe" medical technician identified as "EMT # 537" and an unidentified "John Doe Social Worker Supervisor" at LSP, complaining that his constitutional rights were violated on February 1, 2013, when defendant Mark Allen allegedly subjected him to unsanitary working conditions and denied him medical attention, and continuing thereafter when the remaining defendants allegedly subjected him to deliberate medical indifference.[1]

---

1. An attempt by the United States Marshal's Office to serve the defendants identified in the Complaint as "Jane Doe EMT # 537" and "John Doe Social Officer Supervisor" has proven unsuccessful because the Louisiana Department of Public Safety and Corrections has refused to accept service on behalf of these defendants without further identifying information. *See* Rec. Doc. 11. Pursuant to Order dated October 2, 2013 (Rec. Doc. 10), the Court specifically advised the plaintiff that he could undertake discovery to obtain the identities of these defendants. Despite notice, however, the plaintiff has failed to provide additional information regarding the identities of these defendants, and he has not propounded discovery in an effort to obtain such

In the instant Motion, the defendants seek dismissal of certain of the plaintiff's claims, asserting that the plaintiff has failed to exhaust administrative remedies relative to these claims. In seeking such dismissal, the defendants rely upon the pleadings, a Statement of Undisputed Facts, a certified copy of the plaintiff's pertinent administrative remedy proceedings, and the affidavit of Rhonda Z. Weldon.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the

---

information. Under Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a plaintiff to serve a defendant within 120 days of commencement of an action is justification, in the absence of a showing of good cause, for dismissal of that defendant from the proceeding. It is appropriate, therefore, that the plaintiff's claims asserted against the defendants identified in the Complaint as "Jane Doe EMT # 537" and "John Doe Social Officer Supervisor" be dismissed, without prejudice.

existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint, the plaintiff alleges that on February 1, 2013, he was assigned to cut potatoes in the planting shed at LSP, and he suffered a blister on his right index finger. According to the plaintiff, he requested medical attention at that time, but defendant Mark Allen refused this request and allegedly threatened the plaintiff with disciplinary action if the plaintiff persisted. In addition, the plaintiff complains that the knife that was given to him to cut the potatoes was rusty and unsanitary, and he was not provided with rubber gloves to protect against infection.

According to the plaintiff, approximately two weeks later, on February 15, 2013, he elected to burst the referenced blister. Two days after doing so, on February 17, 2013, he requested medical attention because his finger had become swollen. On that date, he was allegedly seen and evaluated by a medical technician identified as "EMT # 537," who prescribed a 3-day duty status of bed-rest and no duty. Thereafter, on February 19, 2013, the plaintiff again requested medical attention and this time was evaluated by a medical technician identified as "EMT # 23" (not named as a defendant by the plaintiff), who ordered medication for the plaintiff. Later on the same date, the plaintiff also declared himself to be a medical emergency and was evaluated by defendant EMT White ("EMT # 535"), who allegedly criticized the plaintiff for

having ruptured the blister with his teeth. Notwithstanding, the plaintiff acknowledges that he was taken to the LSP infirmary shortly thereafter and was there prescribed "Bactrim" (an antibiotic) by defendant Dr. Collins and given another duty status, calling for no use of his right hand for three days. Finally, on February 21, 2013, the plaintiff again requested medical attention and was seen the next day, February 22, 2013, by an unidentified medical technician, who ordered that the plaintiff be escorted to the LSP infirmary. Once there, Dr. Collins evaluated the plaintiff and determined that the plaintiff needed to be sent to an outside medical facility for treatment. As a result, the plaintiff was transported to the Medical Center in New Orleans where surgery was performed on his finger and where he was allegedly told that he had suffered a bacterial infection at the site of the blister.

The plaintiff asserts that he returned to LSP on February 26, 2013, with orders for physical therapy, for a 10-day course of Bactrim, and for a follow-up appointment with the New Orleans facility, "if his condition worsened or as needed." He complains, however, that these orders were not complied with. Instead, an unidentified physician informed the plaintiff on February 27, 2013, that the physician had "no knowledge" of an order for physical therapy. In addition, the plaintiff asserts that on March 6, 2013, he was seen by defendant Karla Bringedahl, a nurse practitioner employed at LSP, who allegedly discontinued the prescribed Bactrim. When the plaintiff requested a limited duty status on April 12, 2013, defendant Bringedahl sent the plaintiff for x-rays to his right hand, but the plaintiff complains that he was never told the results of those x-rays. Finally, the plaintiff complains that he requested medical attention on numerous dates during routine sick-call at LSP, specifically on March 25 and 27, April 3, 8, and 23, May 7 and 14, and June 4 and 9, 2013, complaining of pain to his finger and requesting to see a physician, but the attending medical personnel, identified as "EMT ladies Ms. M. Diaz and Ms.

Jane Doe" merely kept telling him that he had "an appointment in two weeks" or that he would be "seen in a few days."

Finally, the plaintiff asserts that beginning on March 20, 2013, he requested mental health attention from an unidentified "John Doe" social worker who made rounds on the plaintiff's housing unit, but was told by that officer that the plaintiff's complaints were "medical problems," not mental health problems, and advised the plaintiff to contact the medical department to address these concerns. The plaintiff complains, however, that he should have been provided with the requested mental health attention and, to this end, he asserts that he addressed correspondence to defendant Stephanie Lamartiniere, "trying to solve the situation," but defendant Lamartiniere failed to respond to his correspondence.

Initially, before addressing the contentions made by the defendants in the instant Motion, the Court notes that the plaintiff has named the defendants herein in both their individual and their official capacities. Section 1983, however, does not provide a federal forum for a litigant seeking monetary damages against a state official acting in an official capacity, specifically because such official is not seen to be a "person" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and explained that a suit against a state official in an official capacity for monetary damages is treated as a suit against the State and is therefore barred by the Eleventh Amendment to the United States Constitution. *Id.* at 25. Accordingly, the plaintiff's official capacity claims asserted against the defendants for monetary damages are subject to dismissal for failure to state a claim upon which relief may be granted. In contrast, the plaintiff's *individual* capacity claims asserted against the defendants for monetary damages remain viable because claims asserted against state officials in their individual capacities, seeking to impose liability for

actions taken under color of state law, are not seen to be claims asserted against the State.  *Id.* at 29.

Turning to a consideration of the plaintiff's claims asserted against the defendants in their individual capacities, the defendants assert in the instant motion that certain of the plaintiff's claims are subject to dismissal for failure to exhaust administrative remedies.  In this regard, pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[2]  This provision is mandatory and applies broadly to "all inmate suits about prison life".  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions.  *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules.  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'"  *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525.  Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose.  *Id.*

Upon a review of the plaintiff's pertinent administrative grievance, *i.e.,* the grievance which he filed relative to the claims asserted in this proceeding, the Court concludes that the

---

2.  42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

defendants' motion is well-taken.  Specifically, a review of the referenced grievance reflects that the plaintiff submitted same to prison officials on February 28, 2013, shortly after his return from the New Orleans Medical Center, and he complained therein of the events leading up to his need for a transfer to that facility for surgery on February 22, 2013.  *See* Rec. Doc. 14-3 at pp. 4-6.  Specifically, the plaintiff complained that on February 1, 2013, he was made to cut potatoes with allegedly unsanitary equipment, *i.e.*, a knife with mildew and rust spots and a white pasty film, that he suffered a blister on his finger on that date, that he elected to burst the blister two weeks later on February 15, 2013, and that commencing on February 17, 2013, he sought medical attention when his finger began to show signs of swelling and infection.  After allegedly receiving medical attention on February 17, 19, 21 and 22, 2013, his condition worsened and he ultimately required surgical intervention at the New Orleans facility.  He complained in the referenced grievance that his treatment should have been more aggressive and that his Eighth Amendment rights were violated by the defendants' actions in "refusing to refer me to see a doctor until the situation got to[o] bad."  Finally, he complained in the grievance that although the New Orleans facility had provided him with paperwork upon discharge, "showing me exercises to keep my tenons in my finger from stiffing up," the referenced paperwork was allegedly lost or misplaced, resulting in stiffness to his finger joints.

Based on the foregoing, the Court finds that the referenced grievance does not adequately assert any claims relative to events occurring subsequent to February 28, 2013, the date that the grievance was signed and submitted to prison officials.  Specifically, the plaintiff makes no claim in the referenced grievance relative to any alleged failure by prison officials to provide him with physical therapy, to provide him with the medication prescribed by the New Orleans facility, to provide him with a follow-up appointment at that facility, or to address his requests for medical attention, for a limited duty status or for mental health treatment commencing in March, 2013.

Accordingly, it is appropriate that the plaintiff's claims relative to these alleged deficiencies, all occurring after February 28, 2013, be dismissed for failure to exhaust administrative remedies. As a concomitant result of this conclusion, it is also appropriate that the plaintiff's claims asserted against defendants Karla Bringedahl, EMT Diaz, and Stephanie Lamartiniere be dismissed inasmuch as the plaintiff's claims asserted against these defendants all relate only to events occurring subsequent to February 28, 2013.

In addition to the foregoing, the Court also finds that the plaintiff's claims asserted against defendant Mark Allen are subject to dismissal for failure to exhaust administrative remedies. Specifically, as to this defendant, although the plaintiff alleges in his Complaint that defendant Allen was the foreman who supervised the cutting of potatoes on February 1, 2013, who allegedly provided rusty and unsanitary knives (without protective gloves) to do so, and who allegedly refused a request by the plaintiff to seek medical attention on that date – and instead threatened the plaintiff with disciplinary action – the plaintiff's administrative grievance makes no assertion whatever relative to any conduct by defendant Allen and does not even mention defendant Allen by name or rank. Nor does the plaintiff state in the grievance that he requested rubber gloves, that he complained about the unsanitary knives to any person, or that he requested medical attention from defendant Allen or from any other LSP official on the referenced date. To the contrary, the plaintiff specifically states in the referenced grievance that he did *not* request medical attention, allegedly because he "didn't want to get wrote up for Malingering," which disciplinary write-up may occur under the prison rulebook if a "qualified medical staff person ... determines that an offender has sought emergency medical treatment ... when there was no ailment or when there was a minor ailment that was or could have been properly handled at [routine] sick call." *See* Rec. Doc. 14-3 at p. 4. Accordingly, the plaintiff's grievance is not sufficient to provide notice to prison officials that the plaintiff intended to assert a claim

regarding any alleged misconduct by defendant Allen or any alleged failure to provide the plaintiff with medical attention on the referenced date. Accordingly, the plaintiff's claims asserted against this defendant have not been administratively exhausted and must be dismissed.

Finally, although not addressed in the defendants' motion, the Court finds that, to the extent that the plaintiff's Complaint may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, the exercise of such jurisdiction should be declined. A district court is authorized to decline the exercise of supplemental jurisdiction if the potential state law claims raise novel or complex issues of state law, if the claims would substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, considering the allegations of the plaintiff's Complaint and the Recommendation of the Court that all of the plaintiff's claims be dismissed except his claim of deliberate medical indifference asserted against two (2) defendants relative to events occurring between February 17 and February 28, 2013, the Court recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over the plaintiff's state law claims. It is further recommended that the plaintiff's claims asserted against the defendants in their official capacities be dismissed for lack of jurisdiction and that the plaintiff's claims asserted against the defendants identified in the Complaint as "Jane Doe EMT # 537" and "John Doe Social Worker Supervisor" be dismissed, without prejudice, for failure of the plaintiff to serve these defendants within 120 days as mandated by Fed. R. Civ. P. 4(m). It is further recommended that the Motion for Partial Summary Judgment of the remaining defendants (Rec. Doc. 14) be granted, dismissing – for failure to exhaust administrative remedies pursuant to

42 U.S.C. § 1997e(e) – the plaintiff's claims relative to all events occurring subsequent to February 28, 2013, and the plaintiff's claims asserted against defendants Mark Allen, Karla Bringedahl, EMT Diaz and Stephanie Lamartiniere.  It is further recommended that this matter be referred back to the Magistrate Judge for further proceedings in connection with the plaintiff's claim asserted against defendants Jason Collins and EMT White regarding alleged deliberate medical indifference occurring between February 17 and February 28, 2013.

Signed in Baton Rouge, Louisiana, on June 20, 2014.


**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**